# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOSE RODRIGUEZ, ) | |
| ) | No. 15 C 9329 |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Magistrate Judge Susan E. Cox |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of the U.S. Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jose Rodriguez ("Plaintiff") appeals the decision of the Commissioner of the Social Security Administration ("SSA") denying his Social Security disability benefits under Title II ("DIB") of the Social Security Act ("the Act"). Plaintiff has filed a brief, which this Court will construe as a motion for summary judgment [dkt. 15] and the Commissioner has filed a cross-motion for summary judgment [dkt. 20]. After reviewing the record, the Court grants Plaintiff's motion for summary judgment and denies the Commissioner's cross-motion for summary judgment. The ALJ's decision is reversed and remanded for further proceedings consistent with this opinion.

## BACKGROUND

### I. Procedural History

Plaintiff filed a DIB application on September 24, 2012, alleging a disability onset date of August 23, 2012. (R. 258.) His initial application was denied on December 11, 2012 and again at the reconsideration stage on March 21, 2013. (R. 158-170.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on March 26, 2013; the hearing was held on February 20,

2014. (R. 79, 202-03.) Plaintiff appeared at the hearing with his attorney. (R. 79.) Vocational Expert ("VE"), Aimee Mowery, and Medical Expert ("ME"), James McKenna, were also present and offered testimony. (R. 79.) On May 14, 2014, the ALJ issued a written decision denying Plaintiff's application for DIB. (R. 38-48.) The Appeals Council ("AC") denied review on August 24, 2015, thereby rendering the ALJ's decision as the final decision of the agency. (R. 1-7; *Herron v. Shalala*, 19 F.3d 329, 332 (7th Cir. 1994).)

## II.  Medical Evidence

Plaintiff's history of back pain began in 1990 while he was on duty at a bakery. (R. 127, 469.) Plaintiff stated that he had lifted a heavy object when he felt an immediate pinch in his lower back, followed by severe pain. (R. 469.) He presented to a neurosurgeon who administered a series of lumbar epidural steroid injections ("injections") which significantly improved Plaintiff's radiating pain; however, he continued to report constant low back pain. (*Id.*)

Plaintiff's history of knee surgery began in 1991 when he underwent an anterior cruciate ligament ("ACL") reconstruction on his right knee (R. 731.) In 2001, he underwent a knee revision and an exploratory arthrogram;[1] then, in 2008, he had both a right knee revision and a total right knee replacement. (R. 731, 421.) Following his knee replacement, Plaintiff continued to experience pain and stiffness in his knee. (R. 421.)

In November 2011, Plaintiff presented to Dr. John Gashkoff M.D., with complaints of low back pain and left thigh numbness that had gradually increased over the past year. (R. 469.) Dr. Gashkoff examined Plaintiff, diagnosed him with lumbar disc degeneration and lumbar radiculopathy, then administered a series of injections to help alleviate Plaintiff's low back pain. (R. 465, 471-72.) At his follow-up appointment, Dr. Gashkoff ordered a magnetic resonance

---

[1] An arthrogram is "a radiographic record obtained after introduction of opaque contrast material into a joint." *Dorland's Medical Dictionary*, http://www.dorlands.com (last visited December 8, 2016) [hereinafter *Dorland's*].

imaging ("MRI") of Plaintiff's lumbar spine, which revealed a slightly more prominent disc bulge at L1. (R. 460.) He advised Plaintiff to continue normal activities as tolerated and not to engage in bedrest. (*Id.*)

In December 2011, Plaintiff presented to Dr. Jack Casini M.D., due to soreness and swelling in his right knee. (R. 449.) Dr. Casini observed some instability in Plaintiff's knee, but noted he could walk without interruption. (*Id.*) He diagnosed Plaintiff with an unstable right knee total replacement and discussed the possibility of a revision surgery with Plaintiff. (*Id.*)

In January 2012, Plaintiff underwent a right total knee replacement. (R. 414.) Two weeks later Plaintiff returned for a follow-up appointment, where Dr. Casini opined that Plaintiff was healing well from his surgery. (R. 426.)

In January 2013, Plaintiff returned to Dr. Casini for an x-ray on his right knee which revealed it was in good position. (R. 763.) Plaintiff also complained of increasing pain in his left knee, but an x-ray revealed that it was normal. (*Id.*)

In February 2013, Plaintiff presented to Dr. Lena Shahbender, M.D. for his low back pain and knee pain. (R. 747.) Dr. Shahbender reviewed Plaintiff's medical history, diagnosed him with degenerative disc disease, chronic low back pain, and Iliotibial band syndrome,[2] and recommended physical therapy for his left knee pain. (R. 748.)

In July 2013, Plaintiff returned with complaints of back and hand pain, difficulty walking, and the constant need to sit. (R. 928.) Dr. Shahbender ordered him a seated walker, but she advised him to continue normal activities as tolerated and not to engage in any form of bedrest. (R. 929-30.) In February 2014, Dr. Shahbender noted that Plaintiff had difficulty walking for more than five minutes and, again, ordered him a walker. (R. 971.)

---

[2] Iliotibial band syndrome is a "caused by repetitive rubbing of the iliotibial tract (or band) against the lateral femoral epicondyle . . . ; the primary symptom is severe pain in the thigh and knee." *Dorland's*.

3

Plaintiff underwent a full body bone scan and MRI shortly before his hearing in February 2014. (R. 91.) Plaintiff submitted these records to the ALJ on February 25, 2014.[3] (Pl.'s Br., at Exhibit A.) The undated bone scan was negative.[4] (*Id.*) The undated MRI revealed degeneration of Plaintiff's ACL and cartilage thinning. (*Id.*)

### III. Testimony

An ME was present at Plaintiff's hearing and offered testimony. The ALJ asked the ME to list the medically determinable impairments of record. (R. 93.) The ME testified that Plaintiff suffered from osteoarthritis of his right knee with two knee replacements, lower back degenerative disc disease and mild facet arthritis,[5] chronic pain syndrome, a Schmorl's node in his lumbar spine,[6] diabetes, sleep apnea, nicotine dependence, and non-severe hypertension. (R. 94-95.)

The ME stated that Plaintiff's right knee replacement was successful and that he presented with a normal gait. (R. 96.) He ultimately opined Plaintiff would be limited to light level work due, in part, to his knee replacement and Schmorl's node. (R. 104.) The ME testified that Plaintiff should avoid ladders, ropes, scaffolds, unprotected heights, moderate exposure to extreme cold or vibration, and slippery wet surfaces. (R. 104-05.) He stated that Plaintiff could occasionally stoop, crouch, kneel, and climb five or six step ladders, ramps, and stairs. (R. 105.)

A VE was also present and offered testimony. The ALJ asked the VE whether a hypothetical person with the same age, education, and work experience as Plaintiff, and a residual functional capacity ("RFC") limited to light exertional work and occasionally stooping,

---

[3] In her opinion, the ALJ noted that copies of these studies were not received. (R. 41.) In her motion, Commissioner noted that she received documents on February 25, 2014, but the MRI was not among them. (Def.'s Mem. at 8.)
[4] A negative finding typical "indicat[es an] absence . . . of a condition." *Dorland's*.
[5] Facet arthritis is "a type of spondylarthritis centered in facet joints, with disk degeneration and pain; it is most common in the lumbar region." *Dorland's*.
[6] A Schmorl's node is "a small mass of tissue in the form of a swelling, knot, or protuberance." *Dorland's*.

kneeling, crouching, crawling, using five or six step ladders, ramps, and stairs and avoiding long ladders, ropes, scaffolds, unprotected heights, moderate exposure to extreme cold or vibration, and slippery wet surfaces, could perform any of Plaintiff's past work. (R. 140-41.) The VE responded that such a hypothetical person could not perform any of Plaintiff's past work, but other jobs, including hand packager, marker, and sorter would be available to such an individual. (R. 141.) The ALJ then asked the VE if these jobs would remain available to a hypothetical person with the additional RFC limitations of frequent bilateral handling and fingering[7] and alternating between sitting and standing positions each half hour, to which the VE responded that they would remain available. (R. 141-42.) In her final hypothetical, the ALJ asked the VE whether light exertional positions that were not repetitive in nature would be available for such an individual. (R. 142.) The VE stated that occupations including office helper, housecleaner, and mail clerk, would be available, but that they would not remain open to an individual with a sedentary exertion level. (R. 143.)

## IV.     ALJ Decision

On May 14, 2014 the ALJ issued a written determination denying Plaintiff's DIB application. (R. 38-48.) As an initial matter, the ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2012. (R. 40.) At step one, the ALJ determined that Plaintiff did not engage in Substantial Gainful Activity ("SGA") since his alleged onset date of August 23, 2012. (*Id.*) At step two, the ALJ found that Plaintiff had the severe impairments of osteoarthritis of the right knee with two ultimate knee replacements, degenerative disc disease and mild facet arthritis, diabetes mellitus, sleep apnea, obesity, chronic pain syndrome, and nicotine dependence. (R. 40.) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of

---

[7] As opposed to constant bilateral handling and fingering. (R. 141.)

the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. (R. 41-42.) At step four, the ALJ then assessed Plaintiff's Residual Functional Capacity ("RFC") and determined that Plaintiff could perform light work except that he should avoid climbing long ladders, ropes, and scaffolds, moderate to extreme cold or vibration, and unprotected heights, but could occasionally stoop, kneel, crouch, or crawl. (R. 42-43.) The ALJ stated Plaintiff could vocationally climb five or six step ladders, ramps, and stairs and perform frequent bilateral handling and fingering. (R. 42.) The ALJ further determined that Plaintiff must be allowed to alternate between sitting and standing positions every half hour while performing a task. (R. 43.) In support of her determinations, the ALJ ascribed significant weight to the findings of two State agency consultants who opined that Plaintiff retained the capacity for light demand work. (R. 45.) In contrast, she gave little weight to the notations of treating physician, Dr. Shahbender, which ordered Plaintiff a seated walker, reasoning that they were inconsistent with other evidence in the record which indicated Plaintiff had normal strength in his knees and was encouraged to continue activities as tolerated. (R. 43, 46.) The ALJ also discounted Plaintiff's allegation that he could not walk long distances, finding that it was inconsistent with other medical evidence which demonstrated his right knee was stable and that the injections had provided him significant pain relief. (R. 44). At step five, based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff can perform jobs existing in significant numbers in the national economy, leading to a finding that he is not disabled under the Social Security Act. (R. 47-48.)

## STANDARD OF REVIEW

The ALJ's decision must be upheld if it follows the administrative procedure for determining whether the plaintiff is disabled as set forth in the Act, 20 C.F.R. §§ 404.1520(a)

and 416.920(a), if it is supported by substantial evidence, and if it is free of legal error. 42 U.S.C. § 405(g). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Although we review the ALJ's decision deferentially, she must nevertheless build a "logical bridge" between the evidence and her conclusion. *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). A "minimal[ ] articulat[ion] of her justification" is enough. *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008).

## ANALYSIS

Plaintiff asserts that the ALJ made three errors. First, Plaintiff argues that the ALJ improperly weighed the opinion evidence of his treating physician. (Pl.'s Br. at 3.) Second, Plaintiff argues the ALJ erred when she relied on the opinions of non-examining State Agency Physicians. (Pl.'s Br. at 4.) Finally, Plaintiff argues the ALJ failed to discuss the medical expert testimony taken at the hearing in violation of Social Security Rule 96-8p. (Pl.'s Br. at 5.) The Court finds that the ALJ erred because she failed to properly weigh the medical opinion evidence of Plaintiff's treating physician. Because this conclusion requires reversal, the other alleged errors need not be addressed at this time.

**A. The ALJ Failed to Properly Weigh the Opinion Evidence of Plaintiff's Treating Physician.**

First Plaintiff argues that the ALJ improperly weighed the opinion evidence of his treating physician, Dr. Lena Shahbender. (Pl.'s Br. at 3.) Specifically, he asserts that the ALJ failed to give controlling weight to the medical opinion of Dr. Shahbender, who observed Plaintiff could not walk for more than five minutes and ordered him a walker. (Pl.'s Br. at 3-4.) Plaintiff argues that the ALJ was required to engage in a discussion explaining the weight she

7

applied to Dr. Shahbender's opinion using the factors listed in 20 C.F.R § 404.1527. (*Id.*) Plaintiff opines that the ALJ failed to discuss the evidence, requiring remand. (Pl.'s Br. at 4.)

Commissioner argues that the ALJ supported her decision to assign no weight to Dr. Shahbender's opinion with substantial evidence. (Def.'s Mem. at 3-5.) Specifically, Commissioner asserts that the ALJ pointed to specific instances in the record that showed Plaintiff could perform activities "as tolerated" and was encouraged to exercise. (Def.'s Mem. at 3-4.) Commissioner contends that the ALJ engaged in a lengthy discussion of Plaintiff's history of back pain, knee pain, and other medical treatments and provided specific reasoning for rejecting Dr. Shahbender's opinion. (Def.'s Mem. at 5.)

A treating physician's opinion is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record. See 20 C.F.R. § 404.1527(c)(2). If an ALJ finds that the treating source opinion is inconsistent with other substantial evidence in the record, she is entitled not to give the opinion controlling weight; however, she may not thereafter reject the opinion. SSR 96-2p. If the ALJ does not assign controlling weight to a treating opinion she must consider five factors to determine what weight to give the opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of the treatment relationship; (3) whether the "medical source presents relevant evidence to support an opinion"; (4) the consistency with the record a whole; and (5) whether the treating physician was a specialist in the relevant area. 20 C.F.R. § 404.1527(c)(2)-(6).

Here, the ALJ determined that Dr. Shahbender's opinion was inconsistent with other medical evidence in the record and therefore did not assign it controlling weight. (R. 45-46.) Specifically, the ALJ found the treating source medical opinion from Dr. Shahbender that stated

8

Plaintiff could not walk for more than five minutes and required a walker contradicted other medical evidence in the record that encouraged Plaintiff to exercise and documented that he had normal knee strength. (R. 46.) After she noted this inconsistency, the ALJ improperly concluded her analysis and stated that she did not give any weight to Dr. Shahbender's opinion. (*Id.*) Although the ALJ was entitled not give Dr. Shahbender's opinion controlling weight due to her findings, she was still required to address the factors listed in 20 C.F.R. § 404.1527(c) to determine what weight to assign the opinion. SSR 96-2p. SSR 96-2p states that treating source medical opinions like Dr. Shahbender's "are still entitled to deference and must be weighed using *all* of the factors provided in 20 C.F.R. § 404.1527." (*Id.*) (emphasis added). In her decision the ALJ acknowledged that there was some inconsistency between Dr. Shahbender's opinion and the other medical records, but she failed to minimally address any of the other enumerated factors. (R. 45-46.) Specifically, the ALJ did not speak to the length, nature, and extent of Dr. Shahbender's treatment of Plaintiff, the frequency of examinations, the supportability of the decision, or whether Dr. Shahbender had a relevant specialty. Ultimately, the ALJ impermissibly rejected Dr. Shahbender's opinion before engaging in the required discussion.

Commissioner argues that the ALJ engaged in a "considerable discussion of [P]laintiff's allegations of, and treatment for, pain" requiring this Court to uphold the ALJ's findings. (Def.'s Mem. at 5.) However, the issue is whether the ALJ addressed the enumerated factors when she assigned no weight to Dr. Shahbender's opinion, not the depth of her discussion regarding Plaintiff's medical history. Even though the ALJ may have attributed proper weight to Dr. Shahbender's opinion, her failure to articulate her application of each factor to her ultimate conclusion warrants remand for a more thorough analysis.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted and the Commissioner's cross-motion for summary judgment is denied. This matter is remanded for further proceedings consistent with this opinion.

**DATE: 1/5/2017**

_____
**U.S. MAGISTRATE JUDGE, SUSAN E. COX**